IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bartholomew Richard Smith, Jr., | ) | Case No.: 4:25-cv-01065-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Captain J. Hall and Sgt. Jincks, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). (DE 71.) The Report recommends granting Defendants' Motion for Summary Judgment (DE 58), entering judgment on Plaintiff's federal claims, and declining to exercise supplemental jurisdiction over his remaining state law claims.[1]

Plaintiff filed objections to the Report. (DE 74.) Defendants filed a reply. (DE 75.) Plaintiff's objections also challenge the Magistrate Judge's Text Order denying Plaintiff's Motion to Compel. (DE 72.) Because Plaintiff proceeds without counsel, the Court liberally construes his objections as challenging both the Report under Federal

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

Rule of Civil Procedure 72(b) and the non-dispositive discovery ruling under Rule 72(a). For the reasons below, the Court affirms the discovery ruling, sustains Plaintiff's objections only to the limited extent that the Court clarifies and supplements the Report's analysis, otherwise overrules the objections, adopts the Report as modified, grants summary judgment on Plaintiff's federal claims, and declines supplemental jurisdiction over his state law claims.

## A.    Background

Plaintiff was a pretrial detainee at the York County Detention Center during the events underlying this action. His claims arise principally from interactions with Defendant Sergeant Jincks on January 26 and 27, 2025.

Plaintiff states that on January 26, Jincks repeatedly threatened him. According to Plaintiff's verified summary judgment submission, Jincks told him, among other things, "I got you tomorrow" and that Plaintiff knew where to find him after his release. Plaintiff states that he reported those remarks to several detention center employees and asked that Jincks not be permitted near him. He also states that on the morning of January 27, he asked that a different sergeant conduct his escort for shower and recreational time because he feared for his safety. (DE 61 at 2–3.)

Jincks gives a different account of the January 26 exchange. He states that Plaintiff threatened him and made a "finger gun" gesture while Jincks was distributing meal trays. Jincks avers that he responded by stating that he lived in

Clover and that Plaintiff knew where to find him but denies threatening to assault Plaintiff. (DE 58-2 ¶¶ 4, 6.)

On January 27, Jincks and two other officers removed Plaintiff from his cell for shower and recreational time. Because Plaintiff was on administrative restriction, he was placed in handcuffs, leg restraints, and a waist chain and was escorted by three officers.

Plaintiff states that he was facing away from Jincks, carrying shower items, and walking toward the shower when Jincks moved into him and then struck or pushed him forcefully in the back. Plaintiff states that he was thrown forward, fell hard, and struck his head and chest. He denies moving backward into Jincks or presenting a physical threat. (DE 61 at 3–5.)

Jincks and the other escorting officers state that Plaintiff repeatedly used threatening and abusive language, abruptly stopped walking, shifted from side to side, and made contact with Jincks using his shoulder. They state that Jincks placed one hand on Plaintiff's back and extended his arm to restore distance, after which Plaintiff fell or slid to the floor. (DE 58-2; DE 58-3; DE 58-4.)

Plaintiff's Amended Complaint alleges two additional uses of force. First, he alleges that Jincks pulled his handcuffs through the shower door slot and caused his head to strike the shower bars. Second, he alleges that when officers returned him to his cell, Jincks grabbed him from behind, lifted him, and squeezed him until his back "popped." (DE 54 at 6, 8.) Plaintiff did not include either event in the verified statement submitted in opposition to summary judgment.

Medical records reflect that Plaintiff later reported injuries from the incident. A nurse documented a small red, raised area near the center of his forehead, along with Plaintiff's reports of dizziness, blurry vision, confusion, and chest pain. (DE 71 at 7.) Plaintiff was sent to a hospital for further evaluation. Imaging disclosed no acute head injury or other abnormality. (DE 58-5.)

The Amended Complaint may also be liberally construed to allege that Hall failed to protect Plaintiff from Jincks and that Plaintiff was denied timely medical care.

**B.    Report and Recommendation**

The Report concluded that because Plaintiff was a pretrial detainee, his § 1983 excessive force claim against Jincks arose under the Due Process Clause of the Fourteenth Amendment and was governed by the objective-reasonableness standard stated in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Applying that standard, the Report recommended granting summary judgment on Plaintiff's federal claim. (DE 71 at 8–13.)

As to the walk-to-shower incident, the Report found the officers' account consistent with the body-camera recordings. It found that Plaintiff abruptly stopped, shifted backward, and made contact with Jincks using his shoulder; that Jincks then extended his arm to create distance or move Plaintiff forward; and that Plaintiff fell to the floor. The Report concluded that the limited force used was proportionate to the circumstances and was not objectively unreasonable. (DE 71 at 9–11.)

The Report separately addressed Plaintiff's allegation that Jincks pulled his handcuffs through the shower door slot and caused his head to strike the door. It noted that Plaintiff did not include that allegation in his verified statement and found that the record contained no evidence that his head or face struck the shower door. (DE 71 at 11.)

As to the return-to-cell incident, the Report noted that Plaintiff likewise presented no evidence supporting his allegation that Jincks lifted and squeezed him. It relied on the officers' affidavits stating that Plaintiff resisted the transfer and that Jincks firmly guided Plaintiff's wrists and arms so the restraints could be removed. Although the Magistrate Judge was unable to access the overhead surveillance recording after Defendants resubmitted it, the Report concluded that the recording's unavailability did not affect the recommended disposition. (DE 71 at 11–12 & n.5.)

The Report did not separately address a federal failure-to-protect claim against Hall or a federal claim concerning medical care. It recommended that the Court decline supplemental jurisdiction over Plaintiff's remaining state law claims for assault and battery and negligence. (DE 71 at 12–13.)

In a footnote, the Report also explained that Plaintiff's discovery requests were served too late to allow responses before the deadline established by the Scheduling Order. The Magistrate Judge denied Plaintiff's Motion to Compel by contemporaneous Text Order. (DE 71 at 2–3 n.1; DE 72.)

### C.    Legal Standard

#### 1.    Report and Recommendation

The court must make a de novo determination of any portion of the Report to which a party makes a specific written objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In the absence of a specific objection, the court need only satisfy itself that no clear error appears on the face of the record before accepting the recommendation. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

#### 2.    Non-dispositive Discovery Order

A district judge must modify or set aside any portion of a magistrate judge's non-dispositive order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A factual finding is clearly erroneous when, after reviewing the record, the court is left with the definite and firm conviction that a mistake has been committed. Legal conclusions are contrary to law when they fail to apply or misapply the governing statutes, rules, or precedent.

#### 3.    Summary Judgment

Summary judgment is appropriate when the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court views the competent evidence and draws reasonable inferences in favor of the nonmoving party. It may not weigh evidence or resolve genuine credibility disputes.

A declaration used to oppose summary judgment must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify. Fed. R. Civ. P. 56(c)(4). An unsworn declaration may

be considered if it is subscribed as true under penalty of perjury and otherwise complies with 28 U.S.C. § 1746.

When the record contains an objective recording of the disputed events, the ordinary summary judgment standard still applies. But the court need not adopt a version of events that is "blatantly contradicted" by the recording such that no reasonable jury could believe it. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court may rely on a recording only as to matters it clearly depicts; ambiguities, matters outside the field of view, and facts not captured by the recording remain subject to the ordinary requirement that the evidence be viewed in the nonmovant's favor.

## D.     Plaintiff's Objections

Plaintiff principally objects to the discovery ruling, the treatment of his evidence, the Report's factual findings concerning the escort, the failure to consider the unavailable overhead video, and the failure to address all claims he believes he asserted.

### 1.     Discovery and the Motion to Compel

Plaintiff argues that Defendants failed to respond to interrogatories and document requests that he contends would have produced evidence supporting his claims. He asks the Court to reverse the denial of his Motion to Compel.

The Scheduling Order required discovery to be completed by June 23, 2025. (DE 23 at 1.) Plaintiff's requests were dated June 5, 2025, and the accompanying envelope reflects receipt in the detention center mail system on June 6. (DE 63-1 at 2–7.) Rules 33 and 34 ordinarily allow Defendants thirty days to respond. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). The Scheduling Order imposed this same requirement.

(DE 23.) Plaintiff, therefore, did not serve the requests early enough for responses to be due before the discovery deadline.

Plaintiff did not seek an extension before the deadline expired and did not later demonstrate good cause to modify the Scheduling Order. *See* Fed. R. Civ. P. 16(b)(4). The potential relevance of the requested material does not make the requests timely or require reopening discovery after the dispositive motion process began.

The Magistrate Judge's denial of the Motion to Compel was neither clearly erroneous nor contrary to law. Plaintiff's objection to DE 72 is, therefore, overruled, and the discovery order is affirmed.

### 2.     The Rule 56 Record

Plaintiff contends that the Report accepted Defendants' account while disregarding his submissions. The Court clarifies that Plaintiff's response at DE 61 is competent Rule 56 evidence to the extent it states specific facts based on his personal knowledge. Plaintiff concluded that filing with a declaration that its contents were true under penalty of perjury. (DE 61 at 8.) The Court, therefore, considers those portions under Rule 56(c)(4) and 28 U.S.C. § 1746.

The Amended Complaint is different. Plaintiff signed it beneath a Rule 11 certification, but he did not declare under penalty of perjury that its factual allegations were true. (DE 54 at 15.) Allegations appearing only in the Amended Complaint, therefore, do not constitute evidence at summary judgment.

Nor may Plaintiff supplement the Rule 56 record through unsworn factual assertions first presented in his objections. The Court considers the objections in

reviewing the Report, but those assertions are not themselves competent summary judgment evidence.

The Report is modified to reflect the Court's consideration of Plaintiff's verified DE 61 statement. That modification does not alter the disposition.

### 3.    The Walk-to-Shower Incident

As the Report ably notes, a pretrial detainee asserting excessive force under the Fourteenth Amendment must show that the force purposely or knowingly used against him was objectively unreasonable. *See Kingsley*, 576 U.S. at 396–97. Objective reasonableness depends on the facts and circumstances of the particular case. Relevant considerations include:

1. the relationship between the need for force and the amount used;

2. the extent of the plaintiff's injury;

3. efforts made to temper or limit the force;

4. the severity of the security problem;

5. the threat reasonably perceived by the officer; and

6. whether the detainee was actively resisting.

*Id.* at 397.

The Court evaluates the force from the perspective of a reasonable officer at the scene, accounting for legitimate institutional interests and avoiding hindsight.

Plaintiff's verified statement, standing alone, presents an account that differs materially from the officers' affidavits. He states that he was restrained, walking away from Jincks, carrying shower items, and posed no threat when Jincks forcefully

struck him from behind. Ordinarily, that conflict could not be resolved at summary judgment.

A court need not, however, adopt a version of events that is conclusively contradicted by an objective recording so that no reasonable jury could accept it. *See Scott*, 550 U.S. at 378–81. That principle must be applied cautiously. A recording controls only to the extent it clearly depicts the material event; ambiguities and matters outside the recording's field of view remain subject to the ordinary summary judgment standard.

Having independently reviewed the body camera recordings from Jincks and Officer Gaynor and the overhead security footage, the Court finds that they clearly depict the material portion of the escort. The recordings show Plaintiff repeatedly making directly threatening and abusive remarks toward the officers, specifically Jincks, who also engages in crude language with Plaintiff. While moving toward the shower, Plaintiff appears to shuffle from side to side and forward and backward. Plaintiff then slows to a near stop, entering Jincks's personal space, at which point Jincks places one open hand on Plaintiff's upper back and extends his arm. The recordings do not show Jincks striking Plaintiff, charging into him, lifting him, or applying repeated force. Plaintiff falls forward and rolls or slides to the floor. Jincks does not continue using force after Plaintiff falls. Plaintiff immediately speaks to the officers and repeatedly states words to the effect of "I got your ass now." The recordings, therefore, conclusively contradict Plaintiff's account to the extent he

states that he was walking normally, made no contact with Jincks, and was suddenly struck with enough force to send him several feet through the air.

The Court does not reject Plaintiff's account wholesale. It relies on the recordings only as to facts they clearly depict and otherwise views the record in Plaintiff's favor. The recordings foreclose Plaintiff's assertion that he was proceeding normally and was struck without any preceding stop, movement, or contact; they do not independently resolve matters that occurred outside the cameras' fields of view or cannot be discerned from the recordings.[2]

Plaintiff's threatening or abusive language, standing alone, would not justify force, and an officer may not use force to punish verbal provocation. The recordings, however, depict more than speech. They show Plaintiff stop during a controlled escort, shift into the space occupied by the officer immediately behind him and make physical contact while the officers were escorting him toward the shower.

Jincks responded with one open-handed extension that created distance between them. The recordings do not depict a punch, a strike, repeated force, use of the taser glove, or additional force after Plaintiff reached the floor. The force was brief and limited to the immediate encounter. Likewise, Jincks and Plaintiff are of different sizes, with Jincks being significantly taller and having an athletic build. However, the contact applied, considering their physical differences alone, does not demonstrate excessive force as it is not a *Kingsley* factor.

---

[2]    On the body cam footage worn by Jincks, the principal contact occurs at approximately 12:30 in the recording titled "Axon_Body_4_Video_2025-01-27_0858_D01A9351U," submitted as part of DE 58-9. Likewise, the facility video, submitted in the same package, shows contact with Jincks at approximately 9:10:58.

11

The injury evidence does not independently determine whether the force was reasonable, but it remains one relevant *Kingsley* consideration. Medical personnel later documented a small red, raised area on Plaintiff's forehead and recorded his reports of dizziness, blurred vision, confusion, and chest pain. (DE 58-5 at 5.) Hospital imaging disclosed no acute intracranial abnormality or acute cervical spine injury. (DE 58-5 at 6–10.) The absence of a substantial injury is not dispositive, but the objective findings are consistent with the brief and limited force shown on the recordings.

Considering the need to restore spacing and control during the escort, Plaintiff's abrupt stop and physical movement, the single and limited response, the immediate cessation of force, and the medical evidence, no reasonable jury could find that Jincks used objectively unreasonable force during the walk to the shower. Plaintiff's objections concerning this incident are, therefore, overruled.

### 4.    The Shower Door Incident

Plaintiff alleged in the Amended Complaint that Jincks pulled his handcuffs through the shower door slot and caused his head to strike the shower bars.

That allegation does not appear in Plaintiff's verified statement (DE 61). Plaintiff, therefore, has not submitted competent evidence that his head struck the shower door or that Jincks used excessive force during removal of the handcuffs.

The officers' affidavits state that Plaintiff pulled or held the restraints away from the door slot, Jincks regained control of them so another officer could remove

the handcuffs, and Plaintiff's head did not strike the door. The body camera recording likewise does not show Plaintiff's head or face striking the door.

An allegation appearing only in an unverified pleading cannot create a genuine dispute against competent evidence at summary judgment. Defendants are entitled to judgment on this portion of Plaintiff's excessive-force claim.

### 5.     The Return-to-Cell Incident and the Overhead Recording

Plaintiff alleged in the Amended Complaint that Jincks grabbed him from behind, lifted him into the air, and squeezed him until his back popped when officers returned him to his cell.

Defendants submitted an overhead surveillance recording that they contend depicts this event. The Magistrate Judge was unable to open the original file and directed Defendants to provide an accessible version. (DE 67.) Defendants thereafter submitted a new flash drive containing what counsel described as a tested copy. (DE 69.) The Report states that the second submission also could not be opened.

The Court does not rely on the inaccessible overhead recording and makes no finding about what it depicts. Counsel's description of an inaccessible recording is not a substitute for the recording itself.

The unavailability of the recording does not relieve Defendants of their Rule 56 burden, but neither does it convert allegations in an unverified pleading into competent evidence. Plaintiff's description of the return-to-cell incident appears only in the unverified Amended Complaint. It does not appear in his verified statement (DE 61).

The competent evidence does not support Plaintiff's account of the return-to-cell incident. Jincks, Gaynor, and Fuller state that Plaintiff resisted entering the cell and resisted removal of the restraints. They state that Jincks reached around Plaintiff and firmly guided or controlled his arms and wrists so the other officers could complete the transfer, and they deny that Jincks lifted or squeezed Plaintiff. (Jincks Aff. ¶¶ 21–23, DE 58-2 at 5; Gaynor Aff. ¶¶ 14–15, DE 58-3 at 4; Fuller Aff. ¶¶ 5–6, DE 58-7 at 2–3.)

Because Plaintiff supplied no competent contrary evidence concerning this distinct event, no genuine dispute exists. Summary judgment is appropriate without reliance on the overhead recording.

### 6.    The Claim Against Hall

Liberally construed, Plaintiff's filings assert that Hall failed to protect him from Jincks after being informed that Jincks had threatened him. Because Plaintiff was a pretrial detainee, his claim is governed by the Fourteenth Amendment's objective deliberate indifference standard. *See Short v. Hartman*, 87 F.4th 593, 609–12 (4th Cir. 2023). Adapted to a failure-to-protect claim, Plaintiff must produce evidence that: (1) he faced a substantial risk of serious harm; (2) Hall intentionally, knowingly, or recklessly failed to take reasonable action to address that risk; (3) Hall knew or should have known both of the risk and that her inaction posed an unjustifiably high risk of harm; and (4) he was harmed as a result. *See Short*, 87 F.4th at 611. Negligence is insufficient. *Id*. at 612.

14

Plaintiff states that he told several officers about Jincks's remarks and asked that Hall be notified. He also states generally that Hall sent Jincks to conduct the escort even after she had been informed of the situation.

Plaintiff's verified statement establishes that he asked several officers to notify Hall of his concerns and requested that a different sergeant conduct the escort. (DE 61 at 2–3.) Even assuming those officers informed Hall that Plaintiff attributed threatening remarks to Jincks, the evidence would not permit a reasonable jury to find civil recklessness. Hall states that she was told Plaintiff wanted a different sergeant because of an interaction the previous day but was not told of a specific threat of physical assault; that staffing assignments generally were completed before the shift; and that she directed Plaintiff to use the grievance process for his staff complaint. (Hall Aff. ¶¶ 4–8, DE 58-8 at 2–3.)

The escort involved three officers, and the objective recording does not show Jincks carrying out a threatened assault. It shows a brief and limited response to Plaintiff's stopping, movement, and contact during the escort. On this record, Hall's failure to alter the staffing assignment did not expose Plaintiff to an obvious or unjustifiably high risk of serious harm. At most, the evidence could support negligence, which is insufficient under *Short*.

Even crediting Plaintiff's evidence and drawing reasonable inferences in his favor, the evidence does not permit a finding that Hall recklessly exposed him to an unjustifiably high risk of serious harm. The escort included Jincks and two additional officers, and Plaintiff was subject to full restraints. More importantly, the objective

15

evidence does not show that Jincks carried out a threatened assault. It shows a limited use of force in response to Plaintiff stopping and making physical contact during the escort. As explained above, that force was objectively reasonable.

A failure-to-protect claim cannot be sustained merely because Hall declined Plaintiff's preferred staffing arrangement. On this record, her decision may at most support an allegation of negligence, which is insufficient under *Short*. Summary judgment is, therefore, granted on the federal claim against Hall.

### 7. Medical Care

The Amended Complaint includes a brief allegation that Plaintiff requested medical attention and was denied it. Because Defendants construed that allegation as a potential Fourteenth Amendment claim and sought summary judgment on it, the Court addresses the claim to the extent it is fairly presented.

Under *Short*, 87 F.4th at 611–12, Plaintiff must present evidence that he had a serious medical condition, that a particular Defendant intentionally, knowingly, or recklessly failed to respond appropriately, that the Defendant knew or should have known of the condition and the unjustifiably high risk created by the failure to act, and that Plaintiff was harmed as a result. Mere negligence or accidental delay is insufficient.

Plaintiff's verified statement does not identify a request for medical care made to Hall or Jincks, when any such request was made, how either Defendant responded, or any harm caused by a delay attributable to either Defendant. The medical records reflect that Plaintiff was assessed, a physician was contacted, and he was sent for

16

hospital evaluation. (DE 58-5 at 5–10.) No competent evidence would permit a finding that Hall or Jincks intentionally, knowingly, or recklessly failed to respond to a serious condition or exposed Plaintiff to an unjustifiably high medical risk. Defendants are, therefore, entitled to summary judgment to the extent the Amended Complaint presents a federal medical care claim.

### 8.    Additional Theories Raised in the Objections

Plaintiff's objections refer to retaliation, supervisory liability, failure to train, and other theories that were not pleaded as distinct claims in the Amended Complaint and were not developed through competent defendant-specific evidence during summary judgment proceedings.

Objections to a Report are not a vehicle for introducing new causes of action after discovery and dispositive motion briefing have concluded. The Court, therefore, does not construe the new labels in DE 74 as amendments to the operative pleading.

### 9.    Qualified Immunity

Because the evidence does not establish a constitutional violation by either Defendant, the Court need not separately determine whether Defendants would be entitled to qualified immunity.

### E.    State Law Claims

Plaintiff also asserts state law claims for assault and battery against Jincks and negligence against Hall. Once all claims within the Court's original jurisdiction have been dismissed, the Court may decline supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3).

The Court has wide latitude in deciding whether to retain the state law claims and considers judicial economy, convenience, fairness, and comity. *See Henderson v. Harmon*, 102 F.4th 242, 251–52 (4th Cir. 2024); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Ordinarily, when federal claims are eliminated before trial—including at summary judgment—the balance favors dismissal of the state-law claims without prejudice. *See Henderson*, 102 F.4th at 251; *see also Poppleton Now Community Association, Inc. v. La Cite Development, LLC*, 175 F.4th 455, 464–65 (4th Cir. 2026).

All federal claims have been resolved, no federal trial remains, and the remaining claims turn exclusively on South Carolina law. Nothing concerning judicial economy, convenience, fairness, or comity warrants retaining them. The Court, therefore, declines supplemental jurisdiction and dismisses the state law claims without prejudice.

## F.     Conclusion

For the reasons stated above, the Court concludes that Plaintiff's objections do not provide a basis for rejecting the recommended disposition.

It is, therefore, ORDERED that:

1. Plaintiff's objection to the Magistrate Judge's Text Order denying the Motion to Compel (DE 72) is OVERRULED, and DE 72 is AFFIRMED;

2. Plaintiff's objections to the Report and Recommendation (DE 74) are SUSTAINED IN PART only to the extent that this Order clarifies the competent Rule 56 record and supplements the analysis of the claims against Hall and concerning medical care, and are otherwise OVERRULED;

3. the Report and Recommendation (DE 71) is ADOPTED AS MODIFIED by this Order;

18

4. Defendants' Motion for Summary Judgment (DE 58) is GRANTED as to all claims arising under federal law;

5. judgment shall be entered in favor of Defendants Captain J. Hall and Sergeant Jincks on Plaintiff's federal claims;

6. the Court DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claims;

7. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE; and

8. the Clerk of Court shall enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED**.


Florence, South Carolina
August 7, 2026

Joseph Dawson, III
United States District Judge